IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**COREY GARROUTTE**                                                           **MOVANT**

v.                                                             **No. 3:20CR48-SA-RP**

**UNITED STATES OF AMERICA**                              **RESPONDENT**

**MEMORANDUM OPINION**

This matter comes before the court on the motion of Corey Garroutte to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has responded to the motion, and the matter is ripe for resolution. For the reasons set forth below, the instant motion to vacate, set aside, or correct sentence will be denied.

*Habeas Corpus* Relief Under 28 U.S.C. § 2255

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789. *Habeas corpus* principles that developed over time in both English and American common law have since been codified:

> The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the 1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act,

placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id*.

### Section 2255 Proceedings

Section 28 U.S.C. § 2255 permits an inmate serving a sentence after conviction of a federal crime "to move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). As with the writ of *habeas corpus*, *see* 28 U.S.C. §§ 2241, 2254, a § 2255 motion sets forth only four bases on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Thus, a prisoner must claim either a constitutional violation or want of subject matter jurisdiction to invoke 28 U.S.C. § 2255. In the absence of constitutional or jurisdictional defects, a federal prisoner may invoke § 2255 only if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

The district court must first conduct a preliminary review of a section 2255 motion, and "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceeding that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings, Rule 4(b). If the motion raises a non-frivolous claim to relief, the court must order the Government to file a response or to take other appropriate action. *Id.* The judge may then require the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery. *Rules Governing Section 2255 Proceedings,* Rules 6–7.

After reviewing the government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must decide whether an evidentiary hearing is warranted. *Rules Governing Section 2255 Proceedings,* Rule 8. Under the statute, an evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, the court need not hold an evidentiary hearing if the prisoner fails to produce "independent indicia of the likely merit of [his] allegations." *United States v. Edwards,* 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *See Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980). For certain "structural" errors, relief follows automatically once the error is proved. *See Burgess v. Dretke,* 350 F.3d 461, 472 (5th Cir. 2003). For other errors at the trial court level, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case. *Brecht v. Abrahmson,* 507 U.S. 619, 637 (1993); *see also United States v. Chavez,* 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht's* harmless error standard in a § 2255 proceeding). If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

### Facts and Procedural Posture

Defendant Corey Garroutte was indicted on August 19, 2020, for two counts of child pornography under 18 U.S.C. § 2252. On October 27, 2020, he pled guilty to Count Two of the Indictment, and, on February 23, 2021, the court sentenced him to a term of imprisonment of 150 months in the custody of the United States Bureau of Prisons. He seeks post-conviction relief under 28

U.S.C. § 2255, alleging ineffective assistance of counsel during the sentencing phase. He claims that counsel should have inquired about the origin of a tattoo on the lower half of his face before his sentencing hearing; he believes that the court imposed a harsher sentence because of the tattoo. The government has responded to the motion, arguing that the motion is both untimely and without substantive merit. As discussed below, the instant motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 will be dismissed with prejudice as untimely filed, and, in the alternative, on the merits.

## One-Year Limitations Period

Motions to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 are subject to a one-year limitations period:

> (f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on this the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). In this case, subsection (1) applies; the limitations period begins to run from "the date on which the judgment of conviction becomes final."

As with the *habeas corpus* challenge to a state conviction under 28 U.S.C. § 2254, the limitations period to challenge to a federal conviction under § 2255 "becomes final generally upon the

expiration of direct review or the time for seeking direct review." *United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008). Thus:

> [f]or the purpose of starting the clock on § 2255's one-year limitation period . . . a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction.

*Clay v. United States*, 537 U.S. 522, 525, 123 S. Ct. 1072, 1074, 155 L. Ed. 2d 88 (2003). Finally, when a criminal defendant chooses not to pursue a direct appeal of his conviction, that conviction "becomes final for purposes of § 2255 upon the expiration of the [14]-day period for filing a direct appeal." *United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008).

Hence, in this case, Garroutte's conviction became final on March 12, 2021 – fourteen days after entry of judgment on February 26, 2021. The one-year deadline for seeking post-conviction relief under 28 U.S.C. § 2255 thus became March 12, 2022 (March 12, 2021 + 1 year). Garroutte filed the instant § 2255 motion on October 26, 2022, some seven months after the deadline expired. The court must then look to § 2255(f)(2) – (4) to determine whether Garroutte enjoys statutory tolling of the limitations period. As discussed below, Garroutte invokes § 2255(f)(2), arguing that he suffered assaults and intimidation which prevented him from seeking § 2255 relief within the one-year limitations period. He also argues that he is entitled to equitable tolling of the limitations period. Neither tolling provision applies in this case.

### Movant's Single Ground for Relief

Garroutte raises one ground for relief, restated verbatim:

Ground One: Ineffective Assistance of Counsel

While being held at the Lafayette County Jail, Petitioner Garroutte was threatened, his family was threatened, he was beaten, he was physically and mentally abused, and he was forcibly tattooed by two state prisoners who took it upon themselves to administer vigilante justice.

The Court should have been presented with this information at sentencing.

Doc. 39, p. 4. Garroutte concedes that he did not present this ground for relief until after the one-year § 2255 deadline expired. *Id.* at 9. He states that he delayed raising this issue because

> it was not until recently that he felt both he and his family were sufficiently safe that he could confide in others about what happened to him.

*Id*. He seeks statutory tolling of the limitations period under 28 U.S.C. § 2255(f), as well as equitable tolling. As discussed below, Garroutte is entitled to neither statutory nor equitable tolling, and the instant motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 will be dismissed as untimely filed. In the alternative, the instant motion will also be denied on the merits.

**Allegations Regarding Tolling of the Limitations Period Under § 2255(f)[1]**

Garroutte relies upon the same allegations to support each of his tolling theories. During his pretrial detention in the Lafayette County Detention Center ("LCDC"), he was assaulted by two inmates; they threatened him with sexual assault and forcibly tattooed his face. They also threatened to kill him and his family if he told anyone about their actions.

After his sentencing hearing on February 23, 2021, Garroutte was sent to a Federal Transfer Facility called Cimmaron for about two weeks, then to Federal Correctional Institution ("FCI") Texarkana, where he stayed from late March until early April 2021. During that brief period, an inmate extorted $200 from him. He was released from quarantine and was sexually assaulted, knocked unconscious, and awakened in a stairwell suffering from partial amnesia. He was taken to a hospital, treated, returned to FCI Texarkana, and placed in the Secure Housing Unit ("SHU"). An investigation did not reveal the name of the inmate who assaulted him.

He was then moved to Unit K, where other inmates threatened him and excluded him from the

---

[1] The court has summarized Garroutte's allegations and makes no finding regarding their veracity.

television-viewing areas because of the nature of the charges against him. He remained in Unit K for five or six months and was then transferred to Unit B, where his bunkmates would not let him sleep because he snored loudly due to sleep apnea. This continued three or four months, until he obtained a Continuous Positive Air Pressure ("CPAP") machine to treat his sleep apnea. He did not feel that he or his family were safe until his placement in Unit B in July 2022. He signed the instant motion to vacate, set aside, or correct sentence some three months later on October 26, 2022.

## Tolling Does Not Apply in This Case

Neither statutory tolling nor equitable tolling render the instant motion timely.

### Statutory Tolling Does Not Apply

A motion under § 2255 is subject to a one-year limitations period. 28 U.S.C. § 2255(f). The AEDPA limitations period is critical to "one of [its] principal purposes," which is "to curb the abuse of the statutory writ of *habeas corpus*." *See Graham v. Johnson*, 168 F.3d 762, 780 (5th Cir. 1999) (quoting from AEDPA legislative history). As discussed above, absent tolling, the one-year limitations period expired on March 12, 2022, and Garroutte filed the instant § 2255 motion on October 26, 2022. He first argues under 28 U.S.C. § 2255(f)(2) that the government prevented him from seeking § 2255 relief by fostering an unsafe environment during his incarceration (as described in detail above).

Garroutte alleges that the government's failure to provide a safe environment for him to report his safety concerns was an impediment to seeking relief until "approximately July 2022." He thus seeks equitable tolling of the time to file his 2255 due to these safety concerns: threats to him and his family by the two inmates who abused and assaulted him in the Lafayette County Jail. His allegations do not, however, support this claim. First, he informed the jail staff regarding these issues; the staff were aware of the threats, documented his injuries, and placed him in protective custody. Upon his conviction, he was transported (by March 25, 2021, at the latest) to a federal transfer facility, then to a federal prison

on April 7, 2021. He was treated for his injuries after the attack early in his stay at the BOP facility. In any event, once he was transferred to an out-of-state prison in March 2021, the Lafayette County inmates no longer posed a threat to him. He could have sought § 2255 relief at any time between March 2021 and March 2022, but he chose not to. Garroutte has not shown that the government erected a barrier to thwart his ability to file a motion a § 2255 motion by the expiration of the one-year deadline. As such, Garroutte does not benefit from statutory tolling of the one-year imitations period of § 2255.

### Equitable Tolling Does Not Apply

Neither does the petitioner enjoy equitable tolling of the limitations period. "The doctrine of equitable tolling preserves a [petitioner's] claims when strict application of the statute of limitations would be inequitable." *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (per curiam) (internal quotations omitted). The one-year limitations period of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") in 28 U.S.C. § 2244(d) is not jurisdictional; thus, it is subject to equitable tolling. *Holland v. Fla.*, 560 U.S. 631, 645–46 (2010), *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002).

The decision whether to apply equitable tolling turns on the facts and circumstances of each case. *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000); *see also Alexander v. Cockrell*, 294 F.3d 626, 628 (5th Cir.2002) (per curiam). However, a court may apply equitable tolling only "in rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir.1998); *see also Minter v. Beck,* 230 F.3d 663, 666–67 (4th Cir.2000) ("[E]quitable tolling of the AEDPA's one year limitation period is reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result.") (quotation omitted).

The petitioner bears the burden of establishing that equitable tolling is warranted. *See Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir.), modified on reh'g, 223 F.3d 797 (2000) (per curiam). To meet his burden, the petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" of timely filing his § 2255 motion. *Lawrence v. Florida*, 549 U.S. 327, 127 S.Ct. 1079, 1085, 166 L.Ed. 2d 924 (2007) (applied in the context of the one-year limitations period under 28 U.S.C. § 2255). The petitioner need only show "reasonable diligence, not maximum feasible diligence." *Holland v. Florida*, 560 U.S. 631, 653, 130 S. Ct. 2549, 2565, 177 L. Ed. 2d 130 (2010) (internal citations and quotations omitted). A petitioner's delay of four months can show that he has not diligently pursued his rights. *Melancon v. Kaylo*, 259 F.3d 401, 408 (5th Cir. 2001).

In this case, Garroutte's fear of the Lafayette County inmates was rendered moot by his March 2021 transfer to a facility in another state. As such, he may not use fear of reprisal by these inmates as a reason to invoke equitable tolling. In addition, he did not pursue his rights diligently, as he waited months (from approximately May 2021[2] until March 2022) during the period before the one-year deadline expired – and even delayed several months *after* the deadline (from March 2022 until October 2022). Even using the date Garroutte states that he felt safe enough to seek § 2255 relief (July 2022), he waited several months to file the instant motion in October 2022. These delays show that Garroutte failed to pursue his rights with reasonable diligence; as such, equitable tolling is not proper, and the instant motion under 28 U.S.C. § 2255 is untimely filed.

---

[2] The court notes that Garroutte was being transferred and processed into the BOP system between March and May 2021; in addition, he alleges that he was assaulted and treated for injuries during that time.

**Garroutte's Sole Ground for Relief Also Fails on the Merits**

Garroutte argues that defense counsel provided ineffective assistance by failing to inquire about how he got the new tattoo on his face. According to Garroutte, this failure to inquire prevented the court from learning about his mistreatment during his stay at the Lafayette County Jail: the threats to him and his family, the beatings he received, the physical and mental abuse he endured, and the fact that the other inmates forcibly tattooed his face. Garroutte believes that "[he was] sentenced more harshly because of the conspicuous tattoo on the lower left half of [his] face." Doc. 40, p. 6.

**Ineffective Assistance of Counsel**

Garroutte's claim of ineffective assistance of counsel is without substantive merit. The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).

To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th

Cir. 1997). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011).

In the present case, counsel's actions were reasonable. Prior to Garroutte's sentencing hearing, counsel commented on his new face tattoo, providing him the opportunity to inform her of its origin, as well as the assaults and abuse he allegedly endured at the Lafayette County Jail. Regardless of his reasons, Garroutte chose not to divulge that information to counsel, even though he had previously relayed at least some of it to jail officials. In the absence of this knowledge, counsel could not have presented it to the court during sentencing. Hence, counsel did not *fail* to present the information; she did not *have* the information because Garroutte, himself, failed to provide it to her. In any event, such circumstances do not enter into the process for determining a proper sentence, and, if presented, this information would not have affected the sentence the court ultimately imposed. Garroutte has shown neither that counsel's performance was deficient, nor that counsel's actions caused prejudice to his legal position. As such, his claim regarding ineffective assistance of counsel will also be denied for want of substantive merit.

## Conclusion

In sum, the instant motion to vacate, set aside, or correct sentence will be dismissed as untimely filed, and in the alternative, denied for want of substantive merit. A final judgment consistent with this memorandum opinion will issue today.

SO ORDERED, this, the 6th day of August, 2025.

/s/ Sharion Aycock  
SENIOR UNITED STATES DISTRICT JUDGE